**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BORENSTEIN MCCONNELL & CALPIN, P.C., <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA CORPORATION D/B/A BANK OF AMERICA, N.A., JOHN DOE 1 AKA MICHELLE SEUNG, AND JOHN DOE 2 AKA HADRIAN SEUNG, <br><br> Defendants. | **OPINION** <br><br> Civ. No. 2:13-03039 (WHW) (CLW) |

**Walls, Senior District Judge**

Before the Court are two motions: Defendant Bank of America, N.A.'s ("BOA") motion for summary judgment and Plaintiff Borenstein, McConnell & Calpin, P.C.'s ("BMC") cross motion to amend the complaint and for additional discovery. Under Federal Rule of Civil Procedure 78(b), these motions are considered without oral argument. The Court grants BOA's motion in part by deciding that BMC has failed to state a claim over which this Court has original subject matter jurisdiction. This leads the Court to conclude that it is inappropriate to continue to exercise jurisdiction over the state law claims or BOA's counterclaims. The complaint and counterclaims are dismissed without prejudice.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case involves the fall-out from BMC's deposit of a cashier's check in its attorney trust account at BOA. Many of the facts are not in dispute, but for purposes of BOA's motion for

summary judgment the Court views any disputed facts in the light most favorable to BMC, the non-moving party.

On or about April 11, 2013, BMC, a New Jersey professional corporation and provider of legal services, received an email from someone named Michelle Seung ("Ms. Seung"), purportedly located in South Korea, requesting BMC's assistance with the collection of child support, spousal support, equitable distribution, and medical support from her ex-husband ("Mr. Seung"). Compl. ¶¶ 1, 13 (ECF No. 1); BOA's L. Civ. R. 56.1 Statement of Material Facts ("BOA's Statement of Facts") ¶ 2 (ECF No. 12-2); Resp. to Def. BOA's Statement of Facts ("BMC's Resp. to Statement of Facts") ¶ 2 (ECF No. 14-1). Ms. Seung provided BMC with her address in South Korea and also gave an address in Springfield, New Jersey for Mr. Seung. Compl. ¶ 17; BOA's Statement of Facts ¶ 2; BMC's Resp. to Statement of Facts ¶¶ 1-2. On April 16, 2013, Ms. Seung sent a follow-up email to BMC detailing her case and attaching copies of relevant documents. BOA's Statement of Facts ¶ 3; BMC's Resp. to Statement of Facts ¶ 3.

On April 17, 2013, Abraham Borenstein, Esq. ("Mr. Borenstein"), BMC's managing partner, responded to Ms. Seung, informing her that BMC could represent her upon receipt of an executed retainer agreement and retainer fee of $25,000. BOA's Statement of Facts ¶ 4; BMC's Resp. to Statement of Facts ¶ 4. BMC then sent a retainer agreement to Ms. Seung, which she signed and returned on April 20, 2013. Compl. ¶¶ 19-20; BOA's Statement of Facts ¶ 5. BMC alleges that Ms. Seung informed BMC that she and Mr. Seung had agreed to settle the matter and that any payments BMC received from Mr. Seung should be deposited into BMC's attorney trust account. Compl. ¶¶ 18, 21.

On or about April 25, 2013, BMC received a message in a FedEx envelope from Mr. Seung. Compl. ¶ 22; BOA's Statement of Facts ¶ 6. He agreed to pay Ms. Seung's legal fees in the matter,

and he also enclosed what appeared to be a cashier's check drawn on PNC Bank in the amount of $289,100, in partial payment of settlement with Ms. Seung and BMC's attorney's fees. Compl. ¶ 22; BOA's Statement of Facts ¶ 6. On April 25, 2013, BMC deposited the check into its attorney trust account at BOA. BOA's Statement of Facts ¶ 7; BMC's Resp. to Statement of Facts ¶ 7. BMC then informed Ms. Seung, by email, that it had received a $289,100 check from Mr. Seung and had deposited it in BMC's attorney trust account. BOA's Statement of Facts ¶ 8; BMC's Resp. to Statement of Facts ¶ 8. Ms. Seung responded later that day, requesting that BMC wire transfer the funds, minus the retainer fee of $25,000, to Hamamatsu Shinkin Bank, Kamiaraya Branch, Shizuoka Ken, in Japan. BOA's Statement of Facts ¶ 9; BMC's Resp. to Statement of Facts ¶ 9. Ms. Seung added that the funds should be sent early the following morning, April 26, 2013, because her son was scheduled for surgery that afternoon and she needed the money to pay for the operation. BOA's Statement of Facts ¶ 10; BMC's Resp. to Statement of Facts ¶ 10.

On April 26, 2013, Mr. Borenstein went to BOA to make in-person arrangements to wire the $264,100 to Ms. Seung. Compl. ¶ 29; BOA's Statement of Facts ¶ 11. In its complaint, BMC claims that "Mr. Borenstein was informed by representatives of BOA that the funds had not yet been received from PNC Bank, i.e. the PNC Cashier's Check had not cleared and the wire transfer processing system flagged that the funds were not available." Compl. ¶ 29. BMC further contends that "Mr. Borenstein was told that the wire transfer could not be processed and would not be processed until BOA cleared the PNC Cashier's Check." *Id.* ¶ 30. BMC alleges that a bank officer named Elvia and Christina Pena, the branch manager, "informed Mr. Borenstein that BOA would process the wire transfer when the PNC Cashier's check [sic], most likely on April 29, 2013." Compl. ¶ 31. BMC states that it "relied on BOA to send the wire transfer to Ms. Seung only when and if the PNC Cashier's Check cleared and there was sufficient liquid funds derived from the

PNC Cashier's Check in the Attorney Trust Account to properly permit the wire to be transmitted . . . ." Compl. ¶ 32. BMC also claims that on April 29, 2013 it "received a telephone call from Elvia at BOA stating that the PNC Cashier's Check had cleared and that the wire transfer had been processed by BOA." Compl. ¶ 35.

BOA, in characterizing these allegations, puts quotations marks around the word "cleared," indicating its belief that BMC has alleged that this exact word was used in these conversations. *See* BOA's Statement of Material Facts ¶¶ 11-12. BMC disputes this, instead explaining that "the intent of this section of the Complaint was to express that the Defendant employee, in form or in substance, represented to Abraham Borenstein that the wire transfer would not be completed by BOA until the check had been 'honored' or 'finally settled.'" Pl.'s Br. in Opp'n to Def. BOA's Mot. for Summ. J. ("BMC's Opp'n Br.") at 13 (ECF No. 16-1). BMC explains that its proposed "Amended Complaint will allege that the bank teller, in addition to using the word 'cleared' when referencing the deposited check informed Abraham Borenstein, in form or in substance, that the check had been honored." *Id.*

The parties dispute what happened next. BMC alleges alternative scenarios in its complaint: Either (1) "BOA posted the funds from the PNC Cashier's Check as available in the Attorney Trust Account with the knowledge or constructive knowledge that [it] was fraudulent"; or (2) "BOA with knowledge that the [check] had not cleared and the funds were now [sic] liquid posted the funds . . . as available . . . and wired $264,100 to Ms. Seung"; or (3) "BOA allowed the wire transfer to be processed despite the non-clearance of the funds . . . to gain economic advantage by such action"; or (4) BOA negligently posted the funds . . . as available in the Attorney Trust Account"; or (5) "BOA's system improperly did not indicate that the funds had actually not cleared." Compl. ¶¶ 36-40.

BMC asserts that after the funds had been wired, Elvia, the BOA employee, informed BMC that it could pick up a copy of the wire confirmation. *Id.* ¶ 42. BMC picked up the confirmation, scanned it, and emailed it to Ms. Seung. *Id.* On or about April 30, 2013, Ms. Seung emailed BMC to confirm receipt of the funds. *Id.* ¶ 43. BMC claims that it then received a telephone call from a BOA representative on or about May 3, 2013, informing BMC that the check it had presented for deposit was fraudulent. *Id.* ¶ 44. Upon learning this information, BMC alleges that it attempted to contact BOA numerous times over the next five days, but there was "no cooperation." *Id.* ¶ 45.

BOA presents a different, though not entirely inconsistent, account. BOA asserts that the cashier's check was returned by PNC Bank, unpaid, on April 29, 2013. BOA's Statement of Facts ¶ 13; Aff. of Marisa Bilog in Support of BOA's Mot. for Summ. J. ("Bilog Aff.") ¶ 8 (ECF No. 12-6). BOA contends it notified BMC on April 30, 2013, that the check had been returned unpaid. BOA's Statement of Facts ¶ 14; Bilog Aff. ¶¶ 8-9; Reply Certification of Eric Evans, Esq. in Further Support of Def. BOA's Mot. for Summ. J. ("Evans Reply Cert.") Ex. A (ECF No. 17-2).

What happened next is clear. On April 30, 2013, BOA charged back $289,100, the amount of the check, to BMC's attorney trust account, which left the account in an overdraft position. BOA's Statement of Facts ¶¶ 15-16; BMC's Resp. to Statement of Facts ¶ 16; Bilog Aff. ¶ 10 Ex. C. Then on May 7, 2013, BOA advised the Office of Attorney Ethics of the Supreme Court of New Jersey ("Office of Attorney Ethics") that BMC's account was in an overdraft position. BOA's Statement of Facts ¶ 17; BMC's Resp. to Statement of Facts ¶ 17.

BMC filed its complaint on May 10, 2013, asserting eight causes of action against BOA and two causes of action against Ms. and Mr. Seung. BMC alleges BOA is liable for (1) violation of 18 U.S.C. § 1343 (wire fraud), (2) violation of 18 U.S.C. § 1962 (RICO), (3) negligence and/or gross negligence, (4) negligent and/or grossly negligent training, (5) negligent misrepresentation,

(6) fraudulent misrepresentation, (7) breach of fiduciary duty, and (8) defamation. Compl. ¶¶ 52-110.

On May 31, 2013, BOA answered the complaint, generally denying the allegations and raising a series of affirmative defenses. *See* BOA's Answer (ECF No. 4). BOA also asserted counterclaims under state law against BMC. BOA alleges that BMC breached the warranties under N.J.S.A. §§ 12A:3-416, 12A:3-417, 12A:4-207 and § 12A:4-208 (West 2013) by presenting a fraudulent item for deposit. *Id.* at 13. BOA also claims that BMC is liable to BOA for negligence and under the parties' alleged contract for presenting a fraudulent item. *Id.* at 14. BOA asserts that BMC is therefore liable to BOA in the same amount as any claim asserted by BMC, as well as for the amount of BMC's overdraft. *Id.* at 13-14. BMC filed an answer to the counterclaims on June 10, 2013, denying the allegations. *See* BMC's Answer to Countercls. (ECF No. 6).

On September 16, 2013, BOA filed the instant motion for summary judgment. ECF No. 12. On October 29, 2013, BMC filed its opposition and cross motion for leave to amend its complaint and for additional discovery. ECF No. 16. BOA filed its reply on November 11, 2013. ECF No. 17. On December 11, 2013, the Court informed the parties by letter that it would benefit from further briefing by BMC addressing an exhibit that BOA filed with its reply brief after inadvertently omitting it from its initial papers. ECF No. 18. BMC then filed a reply brief on December 18, 2013. ECF No. 20. Finally, BOA submitted a letter on December 20, 2013, asking the Court to disregard some of the arguments in BMC's December 18 submission, arguing that they go "well beyond" what the Court had asked for in its December 11 letter. ECF No. 21.

## II. STANDARDS OF REVIEW

### A. BOA's Motion for Summary Judgment and BMC's Cross Motion for Additional Discovery

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute as to a material fact is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.* The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Where there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott*, 550 U.S. at 380.

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). When it appears that the arguments supporting a motion for summary judgment are directed at the face of the complaint, a "district court c[an]

7

dismiss for failure to state a claim . . . , but a motion so decided is functionally equivalent to a motion to dismiss." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir. 1977) (citing *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007). *See also Melo v. Hafer*, 912 F.2d 628, 633 (3d Cir. 1990), *aff'd* 502 U.S. 21 (1991) (court may "dismiss[] an action for failure to state a claim on the face of the pleadings on a motion for summary judgment," which is "equivalent to a motion to dismiss").

As for BMC's motion for additional discovery under Federal Rule of Civil Procedure 56(d), "[d]istrict courts usually grant properly filed Rule 56([d]) motions as a matter of course." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994) (quotation marks omitted)). This is so because "by its very nature, the summary judgment process presupposes the existence of an adequate record," and it is thus "well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Id.* (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). Such motions are especially appropriate "when there are discovery requests outstanding or relevant facts are under the control of the moving party." *Id.* "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion." *Id.*

In order to support such a motion, "a party seeking further discovery in response to a summary judgment motion" must "submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pa., Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling*, 855 F.2d at 139-40 (quotation marks omitted)). As for timing, "whatever

its decision, it is 'improper' for a district court to rule on summary judgment without first ruling on a pending Rule 56([d]) motion." *Doe*, 480 F.3d at 257 (quoting *St. Surin*, 21 F.3d at 1315).[1]

### B. BMC's Motion to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), once a response to a party's pleading is served, that pleading may be amended only by leave of court or by written consent of the adverse party. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

"[A] refusal of a motion for leave to amend must be justified," *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995), and the Third Circuit has identified the following as permissible justifications: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment," *id.* (citing *Foman*, 371 U.S. at 182). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

---

[1] In this case, because the Court does not rule on the merits of the summary judgment motion, but rather treats it as a motion to dismiss the federal claims, the Court finds this procedural rule inapplicable.

### III. DISCUSSION

BOA moves for summary judgment on BMC's claims, as well as on its counterclaims against BMC. Br. in Support of Def. BOA's Mot. for Summ. J. ("BOA's Br."). BOA contends that its actions were permitted by federal law and regulation, *id.* at 6-8, were consistent with and permitted by the Uniform Commercial Code as enacted in New Jersey ("UCC"), *id.* at 8-13, and were permitted as a matter of contract between the parties, *id.* at 13-16. It argues that compliance with the UCC preempts BMC's common law claims of negligence and/or gross negligence, negligent and/or grossly negligent training, negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duty, and defamation. *Id.* at 16-18.

BOA also argues that the alleged communications with BOA employees do not affect its right to charge back BMC's account and cannot sustain the counts for fraudulent misrepresentation and negligent misrepresentation. *Id.* at 18-21. BOA further asserts that BMC's claims for defamation, breach of fiduciary duty, wire fraud, and RICO are without merit. *Id.* at 21-31. Finally, BOA argues that BMC is liable to BOA on its counterclaims for the breach of several transfer and presentment warranties, and therefore BMC is liable to BOA in like amount to any liability BOA may have to BMC. *Id.* at 31-34.

BMC opposes BOA's motion for summary judgment, and also cross moves for additional discovery and leave to file an amended complaint. BMC first argues that it would be inappropriate for the Court to grant summary judgment at this early stage in the litigation because it has not had the opportunity to engage in adequate discovery, which BMC claims it needs to show genuine issues of material fact. BMC's Opp'n Br. at 5-10. BMC therefore requests the additional discovery contemplated by Federal Rule of Civil Procedure 56(d). *Id.* BMC also contends that BOA has

failed to show that it is entitled to summary judgment because BOA has not presented the Court with sufficient evidence of the facts it asserts. *Id.* at 10-12.

Finally, BMC requests leave to file an amended complaint in order to clarify its allegations and add a cause of action for violation of the New Jersey Consumer Fraud Act. *Id.* at 14. BMC does not indicate that its proposed amended complaint would differ in any other material way. BOA argues that BMC's "motion to amend the Complaint should be denied as futile," BOA's Reply Br. at 15.

The Court finds that BMC has failed to state a claim for wire fraud or violating RICO, and dismisses these claims. This leads the Court to decline to exercise supplemental jurisdiction over the remaining state law claims and counterclaims, and to dismiss the complaint and BOA's counterclaims.

### A. BMC Has Failed to State a Federal Claim

As part of its motion for summary judgment, BOA argues that BMC's claims for wire fraud and violation of RICO are without merit. BOA's Br. at 25-31. The Court agrees and dismisses these counts.

#### 1. Wire Fraud

BOA argues that BMC's claim under 18 U.S.C. § 1343 (2006) for wire fraud should be dismissed because there is no private cause of action under the statute. BOA's Br. at 31. BMC does not challenge this assertion in its opposition brief.

BOA is correct: "[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes." *Addlespurger v. Corbett*, 461 F. App'x 82, 87 (3d Cir. 2012); *see also Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999). The Court

dismisses count one. For the same reason, the Court dismisses count nine against the Seungs for wire fraud.[2]

### 2. RICO

BOA argues that BMC has failed to adequately plead a violation of RICO, 18 U.S.A. § 1962 (2006), in that BMC's complaint does not sufficiently plead an enterprise or allege a pattern of racketeering activity. BOA's Br. at 26-31. In response, BMC essentially reiterates its allegations and asserts that it will be able to establish a RICO violation through discovery. BMC's Opp'n Br. at 8-9. The Court finds that the complaint fails to plead a pattern of racketeering activity.[3]

"A pattern of racketeering activity requires at least two predicate acts of racketeering," which "may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). When "plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." *Id.* To satisfy this standard, a plaintiff must specify "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (quotation marks omitted)). This requirement can be met "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation'" into the allegations. *Id.* at 224 (quoting *Seville Indus.*, 742 F.2d at 791).

---

[2] Because the Court concludes that BMC has failed to state a claim on the face of its complaint, the decision "is functionally equivalent to [one on] a motion to dismiss," even though decided on a motion for summary judgment. *Bogosian*, 561 F.2d at 444.

[3] The Court declines to address the alternative arguments concerning the enterprise element.

"Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

BMC claims that "BOA had knowledge or constructive knowledge and knew or should have known that the PNC Bank Cashier's Check was created by unknown criminal co-conspirators . . . ." Compl. ¶ 55. BMC also states that "BOA wired funds from the account to unknown criminal co-conspirators in Japan . . . ." *Id.* ¶ 56. BMC asserts that "BOA implemented a procedure to misadvise customers regarding funds in their accounts and wire transfers" so that it could "maximize overdraft fees," *id.* ¶ 57, and that this "procedure was implemented throughout the company by customer service representatives," *id.* ¶ 58. It also alleges that "the wire transfer by the Seungs . . . in violation of [the wire fraud statute] has occurred at least two times in the past 10 years." *Id.* ¶ 60.

These allegations fail to plead a "pattern of racketeering activity" sufficient to satisfy Federal Rule of Civil Procedure 9(b). The complaint does not state the "date, place or time" that BOA allegedly implemented a procedure to misadvise its customers, nor does it otherwise "inject[] precision and some measure of substantiation" into the allegations. *Lum*, 361 F.3d at 224. To the extent that BMC relies on its allegation that the Seungs committed wire fraud twice in the last ten years in order to satisfy this element, this also clearly lacks the specificity required by Rule 9(b).

Though BMC argues that it will be able to establish the elements of RICO through discovery, "no amount of discovery can cure a complaint that fails to state a claim." *Bogosian*, 561 F.2d at 460 (Aldisert, J., dissenting on other grounds). The Court dismisses count two.

### B. The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining Claims

Though not briefed by the parties, the Court finds that the dismissal of these claims removes the stated basis of its jurisdiction. BMC asserts that the Court has jurisdiction by virtue of the wire

13

fraud and RICO statutes and "supplemental jurisdiction over the claims in this action pursuant to Section 1367 of Title 28 of the United States Code and the principles of pendent jurisdiction." Compl. ¶ 3. But it is this same section and these same principles which cause the Court to decline to exercise supplemental jurisdiction and to dismiss the complaint and BOA's counterclaims.

Section 1367 provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2006). "Subsection (c), however, provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions are met." *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993). These conditions are when:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

In this case, all three specific reasons Congress provided for declining to exercise jurisdiction are present. First, the Court has dismissed all claims over which it had original jurisdiction – wire fraud under 18 U.S.C. § 1343 and violation of 18 U.S.A. § 1962, RICO. § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (recognizing that "in the usual case in which all federal-law claims are eliminated before trial, the balance of

14

factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

Second, it is clear to this Court that the state law claims substantially predominate over the federal claims. § 1367(c)(2). While BMC has made general, conclusory allegations of a RICO conspiracy and wire fraud, the detailed crux of the complaint is its allegations of negligence, negligent training, and negligent or fraudulent misrepresentation stemming from the communications Mr. Borenstein allegedly had with BOA employees concerning the check at issue. In addition, all of BOA's counterclaims arise under New Jersey state law, and all center on the alleged deposit of a fraudulent item by BMC. Given the dismissal of the federal counts, all of the proofs at trial on both BMC's claims and BOA's counterclaims would concern state law. This circumstance also counsels in favor of dismissing the claims.

Third, the state law claims have the potential to raise novel or complex issues of state law. § 1367(c)(1). As example, much of the parties' briefing centers on BOA's motion for summary judgment with respect to counts five and six, BMC's claims for negligent and fraudulent misrepresentation. BOA argues that the claims are preempted by the UCC, BOA's Br. at 16-18, and also argues that even if they are not, BMC's allegations that BOA employees said the check had "cleared" cannot sustain the claims, *id.* at 18-21. New Jersey's highest court has not squarely addressed whether the UCC preempts misrepresentation claims based on statements made by employees during the check collection process. Nor has it decided whether allegations that an employee used the word "cleared" can sustain such a claim. Though the parties point to cases from other jurisdictions or lower New Jersey courts, decision of these matters would unnecessarily involve this Court in deciding these novel and complex issues of state law. Comity counsels against such action.

Furthermore, generally accepted principles of "judicial economy, convenience, and fairness to the litigants," *Growth Horizons*, 983 F.2d at 1284 (citation and quotation marks omitted), counsel against retaining discretionary supplemental jurisdiction over the state claims. This case is fairly new; these are the first motions presented to the Court. And though the first pretrial order has been entered, ECF No. 10, BMC represents that "the parties have not exchanged one piece of discovery material," BMC's Opp'n Br. at 6 – an assertion BOA does not challenge.

Finally, BMC's proposed amended complaint does not change the allegations with respect to the federal claims, so amendment of the complaint on these counts would be futile. *Jablonski*, 863 F.2d at 292. And BMC's motion for additional discovery also has no potential to affect this conclusion because "no amount of discovery can cure a complaint that fails to state a claim." *Bogosian*, 561 F.2d at 460 (Aldisert, J., dissenting on other grounds).

The Court declines to exercise supplemental jurisdiction over the state law claims and counterclaims.

## IV.  CONCLUSION

The Court dismisses counts one, two, and nine. This leads the Court to conclude that it would be inappropriate to maintain supplemental jurisdiction over the remaining counts or over BOA's counterclaims. The complaint and counterclaims are dismissed without prejudice. An appropriate order follows.

Date:   January 8, 2014

**/s/ William H. Walls**
United States Senior District Judge